# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FONTAINE L. BAKER, SR.<br><br>       Plaintiff,<br>v.<br><br>JON E. LITSCHER, WARDEN PAUL KEMPER, MS. VASQUEZ, MS. FRAZIER, DR. HAGEN, DR. NACKER, DR. BASS, DR. CASTILLO, NURSE PAM, MR. GROW, MR. TRAVIS, MS. BISHOP, MS. DICKES, and JOHN DOES 1 - 5,<br><br>       Defendants. | Case No. 17-CV-1275-JPS<br><br>**ORDER** |

  Plaintiff Fontaine L. Baker, Sr., who is incarcerated at Waupun Correctional Institution, proceeds in this matter *pro se*. He filed a complaint alleging that the defendants violated his constitutional rights. (Docket #1). Plaintiff has paid the filing fee in this matter, and Plaintiff's complaint thus comes before the Court for screening.

  The court shall screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

  A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*,

490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. Section 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's complaint arises from his time at Racine Correctional Institution ("RCI") from October 2016 to January 2017. (Docket #1 at 3-10). Plaintiff states that he suffers from post-traumatic stress disorder ("PTSD"), depression, and insomnia, which together he characterizes as a serious medical condition. *Id.* at 3. On October 5, 2016, he attempted to retrieve his daily medication from Officer John Doe #1. Officer Doe #1 initially gave Plaintiff the wrong medication, but upon a closer review of the medications sheet, told Plaintiff that there were none for him. *Id.* Plaintiff responded that he needed the medication to treat his PTSD, but the officer informed him that he must contact the Health Services Unit ("HSU") or the Psychological Services Unit ("PSU") to remedy the situation. *Id.* Plaintiff wrote a note to both units that same day. *Id.*

The next day, Plaintiff alleges that he began exhibiting withdrawal symptoms, including dizziness, vomiting, diarrhea, and undefined psychological issues. *Id.* Plaintiff was seen by Nurse Pam in HSU and he described his symptoms. *Id.* Nurse Pam admitted that she did not know what was wrong with Plaintiff. *Id.* Though Plaintiff asked for his PTSD medication to be returned, Nurse Pam instead told him to lie down and drink water. *Id.* at 3-4. She did not inform any of her superiors about Plaintiff's ailment. *Id.* at 4.

On October 8, Plaintiff again wrote to HSU about his symptoms. *Id.* An unidentified HSU employee responded that the PTSD medication had been discontinued. *Id.* Plaintiff learned that Dr. Castillo had ended Plaintiff's prescription. *Id.* at 3. Plaintiff says this was done without consulting him. *Id.*

On October 10, Plaintiff wrote to PSU for assistance, *Id.* at 4. Dr. Nacker responded the next day, stating that Plaintiff had failed to request a refill for his medication through HSU. *Id.* Plaintiff says this was untrue. *Id.* Plaintiff wrote to HSU to be seen by a doctor and inquire about the refill issue. *Id.* On October 12, HSU responded that the matters would be discussed in an already-scheduled appointment approximately one week later. *Id.*

Plaintiff was placed in segregation on October 14, though he does not explain why. *Id.* While there, he again wrote to PSU, which gave him the same response the HSU had on October 12. *Id.* He also sought help from a guard named Mr. Grow, as well as Officer John Does #2, #3, and #4. *Id.* at 4-5. Plaintiff also made contact with Mr. Travis, a nurse, and Dr. Bass. *Id.* at 5. Over the next few days, Plaintiff told each of these people about his condition and the need for medication, but none actually secured any help.

*Id.* at 4-5. On October 20, Plaintiff wrote directly to Dr. Castillo, stating that he believed the discontinuation of his medication was a mistake. *Id.* at 5. Plaintiff apparently received no response. *Id.*

Plaintiff repeatedly wrote to both HSU and PSU from October 22 to October 26. *Id.* at 5-6. HSU provided more information about Dr. Castillo's order, indicating that the medication had been stopped due to "noncompliance." *Id.* at 6. Later communications from both PSU and HSU revealed that Plaintiff had failed to show up for multiple appointments with his psychologist, and had refused to take his medications, so the prescriptions were ended by Dr. Castillo on October 5. *Id.* HSU said Plaintiff would see Dr. Castillo again in three weeks, and directed him to write to PSU to get help in the meantime. *Id.* Plaintiff wrote to Dr. Bass in PSU, describing his symptoms, but he was not seen by the doctor or any PSU personnel that day. *Id.*

On October 26, Plaintiff was placed on suicide watch. *Id.* Dr. Wiliniski of PSU met with him there. *Id.* Plaintiff explained what had happened over the past few weeks, and Dr. Wiliniski told him that his PTSD medication should not have been stopped so abruptly. *Id.* at 6-7. Plaintiff was taken off of suicide watch the next day. *Id.* at 7. He saw Dr. Bass at that time, but was told only that HSU was aware of his condition, and did not receive any treatment. *Id.*

On November 1, Plaintiff was released from segregation.[1] On November 4, Plaintiff was seen by Dr. Nacker. Plaintiff complained about his lack of treatment and medication. *Id.* Dr. Nacker initially placed the

---

[1]Again, Plaintiff did not explain why he was initially placed in segregation. His use of the word "released" might indicate that it was a disciplinary issue, but the Court cannot be sure. *See* (Docket #1 at 7).

blame on Plaintiff's failure to make a refill request. *Id.* After Plaintiff produced proof that he had made the requests, Dr. Nacker then said it was Dr. Castillo who had stopped the medication. *Id.* They two continued their discussion for a while, but when Plaintiff left, he did so "without any medication or any clue of when I would receive them." *Id.*

Plaintiff saw a new psychiatrist named Dr. Chen on November 9. Dr. Chen put him on two medications for his medical conditions. *Id.* Plaintiff wrote to the PSU manager, Dr. Hagen, on November 16, to complain about his lack of treatment. *Id.* Dr. Hagen responded on November 21, stating that he was aware that Plaintiff had sought help, but directing him to contact HSU. *Id.* at 8. Around the same time, HSU's manager Ms. Vasquez, and her assistant Ms. Frazier, told Plaintiff to contact PSU. *Id.*

On November 22, Plaintiff decided to file an inmate complaint about what had happened. *Id.* Prior to actually filing the complaint, he spoke with the inmate complaint examiner, Ms. Bones, on November 27. *Id.* She tried to advise him not to file the complaint because he now had his medication. *Id.* He apparently did so anyway. *Id.*

On December 2, Plaintiff "filed a file review." *Id.* He does not explain what this means, but the Court gathers that the "file review" gave him access to documents concerning his medical care. According to Plaintiff, the file review revealed that Officer John Does #1, #4, and #5 had made false entries in his medical file about dispensing his medication after October 5. *Id.* at 8-9. The review also showed that the medical files failed to note Plaintiff taking his medication in the prior months, though he had in fact done so each day. *Id.* at 9. The medical records also contained a medication refill request dated September 30, 2016. *Id.* Plaintiff says he used this

information to supplement his inmate complaint, but he does not state what the outcome of the complaint was. *Id.*

Plaintiff wrote to RCI Warden Paul Kemper on December 9, relaying all that had happened. *Id.* Plaintiff specifically complained about prison guards dispensing medication and making inaccurate entries in medical records. *Id.* Plaintiff describes Warden Kemper's December 13 response as "[t]hanks for your opinion." *Id.* The warden did not stop the practice of using guards to dispense medication or handle medical files. *Id.*

Plaintiff filed another inmate complaint on January 17, 2017, directed at Warden Kemper and the Department of Corrections generally, concerning using guards to distribute medication. *Id.* On January 18, Plaintiff was denied his medication in his normal housing unit by two correctional officers, Ms. Bishop and Ms. Dickes. *Id.* When Plaintiff complained, the officers allegedly laughed at him and threatened to put him in segregation. *Id.*

Plaintiff asserts three claims. The first is made pursuant to the Eighth Amendment for Defendants' deliberate indifference to his serious medication needs. *Id.* This claim is grounded in Defendants "ignoring me and bouncing me around from department to department, causing me to go without needed medical treatment[.]" *Id.* Plaintiff also complains of being taken off of his medication in the first place. *Id.* at 11. Plaintiff's second claim is also for deliberate indifference to medical needs. *Id.* at 10. It is directed at Warden Kemper for using guards to distribute medicine and make medical file notations, rather than medical professionals. *Id.* Finally, Plaintiff states that he would like to pursue medical malpractice claims against Drs. Castillo, Nacker, Bass, and Hagen, Nurse Pam, Mr. Travis, Ms. Vasquez, and Ms. Frazier (Plaintiff does not indicate what medical licenses

those last two hold). *Id.* at 11. Plaintiff seeks monetary and injunctive relief. *Id.* at 11, 13-14.

The *Gayton* case outlines the elements of an Eighth Amendment deliberate indifference claim:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, "deliberate indifference" is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Whether a medical condition is "serious" and whether a defendant was "deliberately indifferent" to it are fact questions, to be resolved by a jury if a plaintiff provides enough evidence to survive summary judgment.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). Non-medical personnel, namely correctional officers, are generally entitled to rely on the expertise and care provided by medical staff, unless they know the medical staff is mistreating the prisoner. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

Plaintiff's allegations, generously construed, enable him to proceed against most of the defendants on a deliberate indifference theory. Nurse Pam, despite admitting that she did not know what was wrong with Plaintiff, did not seek advice from her superiors and did nothing about Plaintiff's medication concerns. Dr. Castillo discontinued Plaintiff's medication when doing so risked serious harm. Dr. Nacker, Mr. Grow, Mr. Travis, Dr. Bass, Dr. Hagen, Ms. Vasquez, and Ms. Frazier were each informed of Plaintiff's problems stemming from a lack of medication but did little or nothing in response.

Though Officer Does #2 and #3 were also told about Plaintiff's symptoms, they cannot be held liable because they were entitled to rely on the medical care provided by the medical staff. The same is not true for Officer Does #1, #4, and #5, who each made false entries in Plaintiff's medical file. If Plaintiff's allegations are true, this conduct caused the entire series of events underlying this case. Ms. Bishop and Ms. Dickes outright refused to provide Plaintiff his medication, evincing their deliberate indifference to his medical needs.

Plaintiff may also pursue a deliberate indifference claim against Warden Kemper for using correctional officers to distribute medication. Plaintiff's allegations support the inference that Warden Kemper knew of the risks inherent in this policy but nevertheless did not alter it, even after receiving Plaintiff's complaint directed to that issue. Plaintiff may not

proceed, however, against Jon Litscher, the Secretary of the Department of Corrections. The complaint contains no indication that Litscher knew about or was in any way involved in Plaintiff's medical care.

Finally, Plaintiff may proceed with medical malpractice claims against Drs. Castillo, Nacker, Bass, and Hagen, Nurse Pam, Mr. Travis, Ms. Vasquez, and Ms. Frazier. *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001) (noting that medical malpractice claims involve a breach of a duty of care that results in injury). The Court assumes, though Plaintiff does not state, that Ms. Vasquez or Ms. Frazier are medical professionals. There is a looming problem with this claim, however. Wisconsin mandates mediation of medical malpractice claims either before a lawsuit is filed or within fifteen days of filing. *Seaquist v. Physicians Ins. Co. of Wis., Inc.*, 531 N.W.2d 437, 441 (Wis. 1995). Plaintiff has not provided any evidence that he mediated his medical malpractice claims. Still, the Court will leave that issue to Defendants to raise as they see fit.

In sum, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One**: Deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, against Defendants Warden Paul Kemper, Ms. Vasquez, Ms. Frazier, Dr. Hagen, Dr. Nacker, Dr. Bass, Dr. Castillo, Nurse Pam, Mr. Grow, Mr. Travis, Ms. Bishop, Ms. Dickes, and John Does #1, #4, and #5; and

**Claim Two**: Medical malpractice under Wisconsin law against Defendants Dr. Castillo, Dr. Nacker, Dr. Bass, Dr. Hagen, Nurse Pam, Mr. Travis, Ms. Vasquez, and Ms. Frazier.

Accordingly,

**IT IS ORDERED** that Defendants Jon E. Litscher and John Does #2 and #3 be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order; and

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[2] If Plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

---

[2]The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 4th day of December, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge